UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-00197 (BAH) |
| v. : | |
| : | |
| KEITH BROWN, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Keith Brown to 14 day's incarceration, 60 hours of community service, and $500 in restitution.

I.   **Introduction**

Defendant Brown, a 62-year-old senior mortgage underwriter, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

1

Brown pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of incarceration is appropriate in this case because Brown convinced his then 18-year-old daughter to join his unlawful entry into the U.S. Capitol Building on January 6, where he paraded and shouted "Stop the Steal," thereby helping to rile up other rioters.

The Court must also consider that Brown's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Brown's crime support a sentence of 14 day's incarceration, 60 hours of community service, and $500 in restitution. in this case.

## II. Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 10 (Statement of Offense), at 1-7.

*Brown's Role in the January 6, 2021 Attack on the Capitol*

Brown traveled to Washington D.C. with his daughter, to attend a rally at the Ellipse in Washington, DC. While at the Ellipse, Brown heard about a rally taking place at the U.S. Capitol and walked to the U.S. Capitol with his daughter.

Despite the highly visible chaos and violence then taking place on the west front of the Capitol Building, Brown and his daughter entered the building at approximately 2:25 p.m., through the recently breached Senate Wing doors. He was wearing a yellow sweatshirt with a red collared shirt underneath, green/tan pants, white visor hat, and a white face mask, holding a sign that read,

"TRUMP 2020."  His sweatshirt had "Trump 2020 Freedom" written on the front and "Stop the Steal" written on the back. He also carried a black cellular phone in his hand.  Brown's daughter followed him through the Senate Wing doors wearing a grey sweatshirt.  Brown is identified in the red circle and the green circle identifies his daughter in the photos below.


Image 1

Brown and his daughter then traveled south down a hallway leading to the Crypt.   An open-source video obtained by law enforcement officials records Brown joining in chants of "Stop the Steal" while walking in this area.


Image 2

3

Brown and his daughter entered the Crypt Lobby East at approximately 2:31 p.m.



Image 3

They eventually crossed through the Crypt Lobby East at approximately 2:42 p.m.



Image 4

At approximately 2:43 p.m., Brown and his daughter walked past the House Wing Door.



Image 5

Brown and his daughter then walked through the hall of columns, exiting the South Door Vestibule at approximately 2:44 p.m., after having been inside the U.S. Capitol building for approximately 19 minutes.



Image 6

*Brown's FBI Interview*

On February 14, 2022, Brown admitted to FBI agents that he and his 18-year-old daughter attended a rally on January 6, 2021, at the Ellipse in Washington, D.C. Brown stated that while at the Ellipse, he heard about a rally taking place at the U.S. Capitol. Brown walked to the U.S. Capitol.  There, he saw the Capitol building doors were open and, along with his daughter, followed the crowd inside carrying a Trump sign.  He traveled through the Capitol Building.  Brown stated he heard a bang coming from somewhere in the Capitol building but could not be sure what it was or where it was coming from. Shortly after the bang, he was told by a police officer that everyone needed to leave the building, Brown said he immediately left the inside of the U.S. Capitol.

*The Charges and Plea Agreement*

On June 12, 2023, the United States charged Brown in a one-count Information with violating 40 U.S.C. § 5104(e)(2)(G), parading, demonstrating, or picketing in any of the Capitol Buildings. On June 23, 2023, pursuant to a plea agreement, Brown pleaded guilty to the Information.  By plea agreement, Brown agreed to pay $500 in restitution to the Architect of the Capitol.

### III.     Statutory Penalties

Brown now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Brown faces up to six months of imprisonment and a fine of up to $5,000. Brown must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79


(D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 day's incarceration, 60 hours of community service, and $500 in restitution.

#### A. The Nature and Circumstances of the Offense

The most important factor in Brown's case is that he brought his teenage daughter into the Capitol Building that day despite the chaos and violence swirling around him.   For almost twenty minutes as he wandered through the U.S. Capitol Building with his daughter, Brown encouraged the rioting by chanting along with the rioters, keeping both himself and his daughter inside the U.S. Capitol building.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

#### B. The History and Characteristics of Brown

Brown does not have any reported criminal history.   He has several years of college education, and has been consistently employed at several agencies in the mortgage industry for over ten years. The government acknowledges that Brown has expressed what appears to be sincere remorse for his criminal conduct in this case.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37). There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Given his expression of sincere remorse and his lack of criminal history, the government believes that Brown is not likely to reoffend in the manner he did on January 6. If Brown continues

8

to show remorse at the sentencing hearing, the need for specific deterrence would not be an important consideration in this case.

### E. The Need to Avoid Unwarranted Sentencing Disparities

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Jean Lavin*, 21-cr-596 (BAH), this Court sentenced Lavin to 36 months' probation including 10 days' incarceration to be served on 5 weekends. Lavin used a bicycle rack ladder to access the Capitol Building and spent approximately 32 minutes inside the Capitol during the riot. He also joined the crowd that surged past police officers trying to hold back the rioters in the Crypt; and witnessed violence against police officers on the West Front, in the Crypt, in the Crypt Annex and in the Northwest Corridor, yet continued to participate in the riot. Similarly, Brown could see and hear confrontations occurring inside and outside the Capitol building and rioters damage and destroy property. But instead of backing away from the chaos, he dragged his daughter into and through the Capitol building.

In *United States v. Dawn Munn*, 21-CR-474 (BAH), this Court sentenced Munn to 36 months' probation to include 14 days of intermittent home confinement. Munn traveled to DC with family members, including her husband and four children. There, the family entered the Capitol through a broken window by the Senate Wing door despite witnessing officer and rioter confrontations. They found their way to a Senate conference room, where they spent time observing a large number of rioters and officers gathered to the west of the building. They left after spending approximately 52 minutes inside the Capitol and bragged on social media privately

and publicly to other users about being in the Capitol building and having stormed the building. Similarly, Brown involved his child in the chaos and dangers of that day. While he did not reach a sensitive area of the U.S. Capitol Building like Munn, he continued to wander through the building with his daughter despite the chaos and rioting occurring around him.

In *United States v. Michael McCormick*, 21-cr-710 (TSC), the defendant entered the Capitol building for about 15 minutes, was vocal in his protests during it, and deleted some data from his mobile telephone afterwards. Judge Chutkan imposed a sentence of 14 days of incarceration, no period of probation or supervise release, and restitution in the amount of $500. Brown may not have been as vocal during his presence inside or outside the U.S. Capitol and did not appear to have deleted evidence of his activities. But Brown spent more time inside the Capitol and caused his daughter to join in his criminal activity.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[2] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Brown must pay $500 in restitution, which reflects in part the role Brown played in the riot on January 6.[3] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental

---

[2] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[3] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

11

agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Brown's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 day's incarceration, 60 hours of community service, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Joseph Huynh*
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270

**CERTIFICATE OF SERVICE**

On this 31st day of August 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

 /s/ *Joseph Huynh*
Assistant United States Attorney
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270